The first case this morning is Samson Electronics v. Rambus. Mr. Taranto. Thank you, Your Honor. We've done this before, haven't we? It has been five years, and I'm sorry we were back. But the first issue here is actually whether we belong here. It's a matter of this court's jurisdiction to hear the appeal. We do not challenge the judgment of the district court. Our only grievance is with certain findings made in an opinion accompanying order that was favorable to Rambus. And we think that it's clear that the law makes unavailable an appeal of those findings where we are not appealing the judgment. That's what the court said in Suntec and Penda and many other cases. A key reason for that principle, of course, is the very practical one that district courts make adverse findings all the time. And if the judgment is not adverse, then this court is going to face itself. These findings are in another case, aren't they? No, these findings were made here. Yes, but they're made here with regard to matters arising in the Infineon case. Am I right about that? The same matter was tried to Judge Payne in the Infineon case. At the end of that trial, he announced his conclusion, but before there was a judgment entered, Infineon and Rambus settled. So no findings were ever actually entered, and there was no judgment. You're settling just to get out of these findings, aren't you? We effectively settled the case by giving covenants not to sue on the patent set issue so that this issue would not be litigated in this forum where Judge Payne had already announced. Are you just forum shopping here? You want to avoid Judge Payne so you can fight this battle elsewhere out with Judge White in California or maybe with Judge Robinson in Delaware or wherever else you are? Well, of course, we had a full trial before Judge White on this very issue, and Judge White found... Yeah, the question is, that isn't the question. Are you trying to just forum shop? Are you just trying to avoid Judge Payne? We are. We have been trying to avoid Judge Payne, just as Samsung and Micron and TR Labs have been trying to obtain Judge Payne because of his very strongly voiced views in the Infineon case. The motive, I think, is awash on both sides. What matters, if one were to get to the transfer question, is whether there was something improper about RAMBA selecting its home forum where related litigation had been pending for five years before a judge who had five years of experience, comparable familiarity with the matter to Judge Payne. Of course, Samsung has not cross-appealed Judge Payne's own ruling that the merits of this case were, in fact, moot. What remained was the fee issue, and once he got to the fee issue, he ruled, ultimately, in Rambas's favor. Therefore, the threshold question is whether this court has appellate jurisdiction to review merely findings in an opinion supporting an order that is favorable to us and, therefore, that we do not appeal. We think it's really quite clear not. Samsung says… So in a sense, Mr. Arnn, you filed your appeal to establish that you couldn't appeal. Exactly, because had there been a real risk that we could appeal and had bypassed the opportunity, then what Samsung agrees would be a dispositive answer to any invocation of collateral estoppel, namely non-appealability, would be unavailable to us. Excuse me, make sure I understand. What is your concern? In other words, if you assume for the moment that no appeal had been taken, what, from Rambas's standpoint, would have been the ill consequences of that? A potential for collateral estoppel in the following sense. There are several necessary requirements to collateral estoppel. One of them is appealability. If we win on the proposition that Judge Payne's findings are not appealable, collateral estoppel is out the window. No further argument need be held. If that were still in dispute, then Judge White or Judge Robinson in Delaware would have had to itself, themselves, answer the question, were Judge Payne's findings appealable? Now, even if they had said, well, yes, they were appealable and you didn't take the appeal, they then would have gone to other grounds for rejecting collateral estoppel. Rambas's big concern is that those findings of fact would be used somehow in other litigation against Rambas, right? That they increase whatever possibility there otherwise might be that they would be used in other litigation. That's right. Now, Samson, in order to, oddly enough, defend Rambas's right to appeal the findings, makes two arguments. One is to say, well, what Judge Payne did here was not simply to deny fees but to do something else, issue some sort of non-fees sanction order. And we think that that's just an incorrect characterization of what Judge Payne did and, indeed, an incorrect characterization of what Judge Payne could have done. Because what Judge Payne did was to say, there are two possible sources of the sanction that I'm talking about. He repeatedly said over and over again, the sanction that's at issue is fees. The order ultimately says the fee request is denied. Full stop. Nothing else. Is 285 a sanction section of the Title 35? It is a fees provision which the court— Is there anything beyond fees at stake there? Absolutely not. Is there some kind of reputation? Is there some sanction? The only sanction, if you want to call it that, in 285 that's authorized is fees. Nothing else. In that respect, it contrasts sharply with Rule 11, which expressly provides for non-monetary sanctions. But 285 doesn't. And Samson hasn't cited anything to say that it does. Of course, the purpose underlying the award of fees is to sanction or punish a party as well as to compensate for losses. But the only sanction available under 285 is fees, not anything else. Now, there is potentially some sort of inherent authority for certain kind of conduct. But, of course, Judge Payne at 252-253 of his opinion expressly rejected the implication— But you can't award the sanction unless you make the finding that it's an exceptional case. Isn't that correct? That's exactly right. That's right. And if the finding of exceptional case is made, why wouldn't that be appealable if that's the predicate to awarding 285 attorney's fees? Because the only concrete relief that 285 authorizes is the award of fees, not a sanction in the form of an exceptional case finding all by itself. And the order that Judge Payne ultimately issued says fees denied. That's not something we're aggrieved about. That's something we are pleased about. We don't challenge the fee award. There's no separate sort of reprimand type characterization of the exceptional case finding that's merely subsidiary to and a point along the path toward the only ultimate determination that's available under 285, which is the fee award. But in Samson's position, if there's a non-exceptional case finding and a non-award of attorney's fees, have made an appeal that the trial court was clearly erroneous when finding facts on the exceptional case decision. Samson could—well, indeed, presumably is—aggrieved by the denial of fees, the order. The ultimate order of no fees. Of course, it didn't appeal the denial of fees. So Judge Payne recognized that 285—and indeed, it's correct—285 authorizes only fees, no non-fees sanction. And Judge Payne rejected the invocation of inherent authority. The only other—so there's nothing but a fees sanction at issue here. The only other ground that Samson suggests somehow escapes the rule that you can only appeal judgments and not findings underlying favorable judgments is the idea that there is a threat of collateral estoppel. And we think that's wrong for a number of reasons. Principally, that as PENDA—this court's case in PENDA—decision in PENDA establishes, if there's an independent bar to appellate jurisdiction, that resolves the question of any potential collateral estoppel. The Supreme Court said in Kershaw, as other courts have said, once the findings or the ruling that's at issue is not appealable, it cannot have future collateral estoppel effect. It's circular to then turn around and say, well, we're going to look for some other basis on which collateral estoppel might be available. Let me comment on really the one thing that Samson tries to point to to argue to the contrary, and that's a sentence in this court's national presto decision. But that decision did not hold, and the single sentence does not even say that— findings appealable where the judgment or order is entirely favorable to the appellate. Of course, what was at issue in national presto, and the court immediately went on to say, was a dismissal order that adversely affected, right then and there, the appellate. The dismissal order took away favorable findings. So that was not a case in which the only order, the actual order, was favorable to the appellate. And the statement, of course, that Samson relies on doesn't say that a threat is an injury even if there is no harmful judgment or order. What it says is it may be, and of course, there was a harmful judgment or order. One final point, just as further background. If you look to the two citations that the court added to its sentence in national presto, one to the Supreme Court's electrical fittings case, one to the Fourth Circuit's HCA decision, you will see that HCA involved the denial of an appeal and cited four decisions, which in turn, not one of which involved a favorable district court judgment, either agency action or, in fact, harmful district court action. And of course, the Supreme Court's electrical fittings case both recognizes the principle that we rely on, that findings are not appealable by themselves unless attached to an unfavorable judgment and, of course, does, in fact, provide for an appeal only on the limited ground that the judgment itself contains something improper. A couple of words about, I guess, the next issue, although it is, of course, our position that if this court lacks appellate jurisdiction, the court need not and cannot go any further to the other issues. We do make a couple of additional arguments. We note that, first, if the district court's jurisdiction is an issue, that is, if this court has jurisdiction, then the next question is, did the district court have jurisdiction? And we think that the precedents are equally clear that once Rambis committed to pay, the only thing that was then in dispute, namely fees, there was no longer a live controversy. And that's so whether or not Samsung said, sorry, we won't pick up your check at the lawyer's office and cash it. Once it was there, it mooted the only controversy at issue. By the way, I guess a housekeeping question here. There was a Rule 68 offer of judgment, correct? There was. And a check was written, and it was delivered to the attorney for Samsung or held in escrow by Rambis' attorney? I think it was sitting at Rambis' attorney's office and said, you know, pick it up at the office. And Samsung never picked it up. Exactly. And that, under many of the precedents we cite in our brief, mooted the only issue because the mere desire for a legal pronouncement, separate and apart from some no longer disputed concrete relief, doesn't keep a case alive. All right, Mr. Taranto, you want to reserve the rest of your time? I will do that. Thank you. Thank you, Mr. Healy. The issue in this case is whether the district court gave sanction to Rambis. Mr. Taranto is correct that you're just as guilty of form-shopping as he is guilty of avoiding form-shopping, right? You're both trying to either get to or avoid Judge Payne, right? I think in this case there is a truth to that, although here what we did was take the same case, Judge Payne or Chief Payne. The answer is probably just yes, and then let's go on with you both having somewhat colored, unclean hands. Let's go ahead and see what we can do with the rest of the case, right? You wanted to tell me why there's some reason after the fees are paid that there's something else existing in 285, I think, to be contested here before the Court of Appeals, right? Yes, sir. What is it? The reason is it's a sanction. The court, Judge Payne clearly… Where's the sanction in 285? It's one sentence. It says an exceptional case gives you fees. Fees is the only thing that's mentioned in the 285. The courts have interpreted the exceptionality requirement that was added to the statute as requiring some type of misconduct, and Section 285 requires, under this court's precedent in Sybor and other cases, a two-step analysis. Each step is reviewed under a separate standard of review on appeal and fact. The first step is a finding of exceptionality. In the Modine manufacturing case by this court, the court held it was appropriate for a district judge to make a finding of exceptionality and then deny fees. It's a two-step process, and here, Judge Payne treated it as such, in fact bifurcating the briefing on the two different issues, exceptionality and attorney's fees. He went through the analysis that this court's precedent instructs him to go through, and that is he made detailed findings based on the complete record of… But exceptionality is only a precursor to fees, right? What's in question is whether or not fees are to be awarded. The fees are not an issue, are they here? Is there some issue on the fees?  You got exactly what you wanted. You got from 285 exactly what you wanted. Now, why are we still here? We are here because Rambis appealed, and the reason Rambis appealed was to take what's clearly a sanctions order and render it a nullity. Well, but isn't it a nullity if you have received everything you sought to achieve by your litigation in the first place? You sought fees. You got fees. End of game. Why are we still here? Because that ignores… Because you want the adverse order. You want to use it in Delaware or California, right? As a practical matter, yes. But is that what's at stake? What's at stake is fees. That's what you sued for. You got them. End of game. No, sir. What's at stake, and the reason we continued, and the reason we didn't appeal the amount of the fees, is because what's at stake is the sanction and the integrity of the judicial process. Those decisions will be made in the cases where it's relevant, right? You having gotten fees, it's not relevant here. Judge White can make findings on that if he finds it necessary to reach spoliation. Maybe it will happen in Delaware where the same litigation is underway, but you've gotten what you want. This case is moved, isn't it? No, sir. Well, tell me why. It's not moving. I'll tell you why. We filed this case for… To get fees. No, we filed this case for declaratory judgment on the various patents, the same patents in the Infinity case. Rambis counterclaim for infringement. They moved to transfer. We moved for summary judgment. Two days before the summary judgment hearing, they gave the covenants not to sue. Judge Payne… So that's over. That's over. Judge Payne was asked by Rambis to dismiss this case based on mootness, the covenants not to sue. He recognized that the purpose of protecting the integrity of the court is not one the parties can settle out without the court's approval. He recognized that Rambis, at a minimum by counterclaiming on the patents that he had previously said would be unenforceable, that this case did go forward. It went forward to the summary judgment stage, albeit the summary judgment wasn't heard. We know all this procedure. The question is, why aren't you satisfied to make your spoliation arguments to either Judge White or Judge Robinson, where they are relevant, where there is a remaining issue before the court about infringement and the validity of that evidence as part of the infringement case? Because we exercised our right to file. We filed a suit. We pursued the suit. All of that's fine, and it was ended. The suit ended. You won. Congratulations. You even got fees. Congratulations. Why are we still here? We're here because Judge Payne retained the jurisdiction to consider Rambis's litigation misconduct, and I don't think there can be an argument that a district court judge, even after a case is fully settled, retains jurisdiction to consider litigation misconduct, to consider sanctions under his inherent authority, and I believe the case under 285 likewise permits that. Having jurisdiction, having determined he retained jurisdiction in November, he went forward and did the exceptional case analysis. He did it as a two-step process. That's what the cases tell him to do. In the first step, he made the exceptional case determination. At page A253 of his order in the appendix, he clearly states that he believes that that's a sanction. I don't think there's another fair reading, and I don't think the difference between whether it's a sanction or not or enforceable or not should be whether he gave us a dollar or not. How is it a sanction? Because it's reputational? It's a sanction in the same way that a judge can say that any misconduct has violated or risen to the level of reprehensible conduct, and here there was an exceptional case standard set forth by Judge Payne, a process by which he resolved whether these facts met that standard, and finding ultimately that it did. What is the sanction, though? The sanction is being required to pay money. You're saying the sanction is the reputational injury? The sanction is the calling out of the misconduct and being labeled a wrongdoing. Is an attorney sanctioned when there's a finding of inequitable conduct? Same sort of thing. There's adverse findings about the conduct of the attorney. They did something wrong at the patent office. Is the finding of inequitable conduct a sanction for that attorney? No, it has a remedy. The remedy is the patents are unenforceable. Now, the court could go a further step and also sanction the attorney if there was something that warranted that. I think the difference here is that in this case, Rambis was a party. In the case of inequitable conduct, the attorney wouldn't be a party. In that case, it's like the cases cited by Rambis. Penda, for example, which was a third party who was not a party, other than being a nominal third party defendant in the court of claims, or the Warner case, or the, I'm sorry, not the Warner case, but the latter case, which was also a third party defendant. In those cases, courts have held people who aren't parties to the judgment, they have no standing to attack what was in the judgment. Just as the attorney who's not a party to the lawsuit, who was never heard, never before the court, who's not bound by the judgment, wouldn't be sanctioned. But were that attorney a party to the case, or a counsel of record to the case, and there were such parties, I think that would amount to a sanction, and it would be appealable by that attorney. Mr. Heath, let me ask you, since there was no money sanction imposed upon Rambis, at least by the district court's order, the sanction has to be this, I think you're arguing is the kind of a reputational stigma, is that it? It's the calling out of wrongdoing by a public company, which I think is a potent sanction. But I mean, when I say this with the utmost respect to your client, Samsung, and to Mr. Toronto's client, Rambis, I'm not sure that these big corporations really get that upset about this kind of a norm. I mean, look at the tobacco companies get sanctioned, get accused all the time in court of things, the oil companies, you know, and I'm not being facetious, but I'm trying to make the point here, I don't think this is, there's really a big reputational issue here. I mean, I don't think Rambis, or Samsung, or Altria, or ExxonMobil lose much sleep about some kind of an order like this. I think whether someone loses sleep over an order or not is a matter of personal taste. I think a publicly traded company, a company that clearly has the same interest in preserving its reputation that any other public company has, is good half-standing to appeal an explicit sanction. And I think that what you have here, and I think that if we step back a moment and look at it, we wouldn't be here, we wouldn't be arguing over appellate jurisdiction if Judge Payne had said, you know, I don't think I can make an exceptional case finding unless I also award attorney's fees, and so I'm going to do what in the first full paragraph of A253 he said was unnecessary. I'm going to go the next step and see if the court's inherent powers apply, and under the court's inherent powers, then I'm going to find that this conduct was inappropriate. Instead, what Judge Payne did was he thought that this was a sanction. He says so in his order. He says that the calling out of improper conduct is in itself a sanction. Yes. And if this were decided under, say, chambers and the inherent authority of the court, there would be no doubt we could appeal. If Judge Payne had ordered them to pay us a dollar, there would be no doubt that this is appealable. The only reason we're here is that there's no real attack on the merits of what Judge Payne found. There's no real attack that the sanction of all conduct occurred. What is attacked is procedurally whether Judge Payne could have done what he did without awarding us a dollar in attorney's fees or without instead calling it something else, i.e. the inherent authority of the court. That's what the issue is, and for those procedural irregularities that Rambis argues exist, Rambis says Judge Payne's 116-page order and the six months that went into that investigation are annulled. It counts for naught. And Rambis says that this court ought to tell Judge White and tell Judge Robinson and tell everybody that it's all for naught, that what Judge Payne did was for his own entertainment and really is meaningless outside of the context of Judge Payne's mind. Let me ask you the same sort of housekeeping question that I asked Mr. Toronto. Do you agree with his statement as to the payment here, offer of judgment, and a check is waiting for Samsung but Samsung has declined to pick up the check? That's what happened, yes. And that's correct? That is correct. And the reason we declined to pick up the check is because what's at issue here is the judicial process, the integrity of the judicial process, and what we believed required an explicit calling out, explicit adjudication, and we wanted to let Judge Payne make that inquiry. Now, even if we had accepted the check, though, even if we'd taken the check and said, fine, we're satisfied, Judge Payne clearly would have had the authority in any event to continue to go forward at least under his inherent authority to decide if there had been misconduct and to do everything that he actually did under his inherent authority. And so it's really not dispositive of appellate jurisdiction, which is simply whether Rambis has a stake sufficient to allow it to appear. That's what Deposit Guarantee held. That's what National Presto cited and relied on Deposit Guarantee for, is whether a party has a sufficient remaining stake in what happened below to appeal. And that's different from PENDA, and that's different from the Balco case, and it's different from Kersher where there's an explicit statutory bar to appeal. And where we are here, come the end of the day, is under any reasonable reading of that 116-page opinion in the paragraph on A253, Judge Payne gave a sanction. After a lot of meticulous work and thinking, and the question here is, is that sanction rendered annulled simply because he didn't give a dollar for doing it under his inherent powers? Thank you, Mr. Healy. And if there's any ambiguity at all in that, that ambiguity should be resolved by Judge Payne, but I see none in this court's report on one basis or the other. Thank you, Mr. Healy. Mr. Taranto, you have about two minutes remaining. Thank you. We, of course, don't suggest for a minute that there was anything wrong with the sequence in which Judge Payne proceeded through the 285 analysis. What about his inherent authority to identify misconduct? Judge Payne said that he was not invoking inherent authority because there's a difficult fine line that this court's decision in the Amstead case, building on the Supreme Court's decision in the Chambers case, requires to be drawn. That line requires a distinction or requires an answer to the question, does the statutorily provided for sanction cover the conduct? If it does, then inherent authority either isn't available or in any event should be resorted to in the most extreme circumstances. So his inherent authority extends no further than what the statute gives him as authority to impose as a sanction. And that's the fees. Is that your argument? I think that for the conduct at issue, when the statute covers it, which 285 does, Judge Payne correctly concluded inherent authority isn't available for that conduct. He wasn't saying that what he had done under 285 was itself independently a sanction of fees. His statement directly mirroring his earlier fees ruling in 2001 in the Infineon case is that under Amstead and Chambers, if the conduct is already addressed by 285, inherent authority is not going to be looked to. Of course, in Infineon, that mattered a lot. He denied a million dollars in expert fees on that very ground. So the point is that he correctly avoided a difficult question of whether inherent authority could be expanded to add remedies for the very same conduct to the remedies provided by the statute. And the statute says fees, nothing else. Thank you, Mr. Taranto.